No. 22,554.

DAN STAINBROOK, *Appellee*, v. A. W. WILSON, *Appellant*.

### SYLLABUS. BY THE COURT.

REAL-ESTATE AGENTS—*Agreement between Two Agents to Divide Commissions—Land Sold—Commission Should Be Divided*. Where the owner of a farm offers a commission to a real-estate agent to secure a purchaser for his farm at a stated price, and the real-estate agent enters into an agreement with a second real-estate dealer whereby they are to coöperate in effecting a sale of the farm and divide the commission between them, and the second real-estate dealer buys the farm himself from the owner, without the owner's knowledge of the agreement between the real-estate dealers and without knowing that the second real-estate dealer had been induced to become interested in the farm through the agency of the first, and where the owner accordingly abates the price for substantially the amount he would have to pay as a commission and the second real-estate dealer profits accordingly, the latter is liable to the first real-estate dealer for one-half of the commission which they had agreed to divide between them.

Appeal from Linn district court; EDWARD C. GATES, judge. Opinion filed June 5, 1920. Affirmed.

*John A. Hall,* of Pleasanton, for the appellant.
*Charles F. Trinkle,* of La Cygne, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was a suit for one-half of a real-estate dealer's commission.

The plaintiff conducted an auto service garage in La Cygne and casually transacted some real-estate business in addition thereto. One C. E. Pollman of La Cygne had a farm of two hundred and fifty-seven and one-half acres near by. Pollman promised to give plaintiff $500 as a commission to find a buyer for the farm at $65 per acre. In April or May, 1918, the plaintiff met the defendant, another real-estate dealer, and

told him about the Pollman place; and according to plaintiff's testimony—

"I had a conversation with Wilson about the place . . . Wilson said he had some buyers for some of this bottom land or thought he could sell some of it and we would divide the commissions. I said that we would look at a place when we come back, we will stop and look at it. We were to divide the commission half and half—50-50. On the way back we stopped and looked at Ed. Pollman's farm, consisting of about two hundred and fifty-seven acres, located about two and one-half miles from La Cygne. We drove through the farm in the car. We talked about the price of the farm, which was $65.00 per acre, and I was to get $500.00 if we sold it for $65.00 per acre. . . . After that Wilson sent two or three or four prospective buyers down to see the farm and he was down himself two or three times, I think. I drove them out to the farm."

In August of the same year the defendant himself bought the farm directly from Pollman for $16,000, which was $237.50 under the net amount Pollman would have realized if he had received his stated price of $65 per acre and if he had been required to pay a commission of $500. Pollman testified:

"I first met Mr. Wilson about the first of August . . . Well, Mr. Wilson met me there and asked me if I had a bottom farm for sale. I told him I did and he asked me what I wanted for it; I told him $65.00 an acre, and I made the same proposition to Mr. Wilson. Well, he handed me his card before that time showing that he was a real estate man and I made him the same proposition that I made to all the rest of the real estate men around town, that I would give him five hundred dollars if he sold the place. . . . I gave him a written agreement stating that I would take $16,232.50, and that agreement was $500.00 less than the $65.00 an acre. . . .

"Q. What did this item of $500.00 represent, that you say you took off? A. It was in accordance with my first proposition that if he sold the place for $65.00 an acre, I was to give him $500.00. . . .

"Q. Then this item of $500.00 deducted from the sale price in your written agreement with the defendant, did represent the commission on the sale of that farm? A. If he sold the farm for $65.00 an acre.

"Q. After taking off this item of $500.00 the price was reduced to $16,232.50, was it not? A. I think that's right."

When Stainbrook learned that defendant had purchased the farm, he demanded from him half the commission. Wilson denied liability.

This action was begun. Stainbrook pleaded the facts, and the testimony in his behalf tended to establish his cause of action. On behalf of Wilson, it was admitted that Stainbrook

gave Wilson his first information about the Pollman farm, while Stainbrook was driving Wilson for hire on some land inspection in that community.

Defandant's testimony:

"Q. What is your best recollection as to what he said he wanted? A. I don't remember that he said just exactly the price on it, and I asked him how many acres he had and he said he thought there was about 270 acres, and we drove down there and looked over the farm the best I could, in fact, I didn't take particular note of it, and we came back to La Cygne and I said, 'Mr. Stainbrook, if you will go to the owner of this farm and get a written contract listed at a net price to you, I will try to sell it, I believe I can do it, and we will whack up the commission; I can't afford to take a straight commission on a farm; it is 75 miles from where I live down to that farm.'

.   .   .   .   .   .   .   .   .   .   .   .   .

"A.   .   .   .   There was nothing said in regard to Stainbrook and I, other than I told him if I had some of that land for sale, I thought I could sell some of it, and we spoke of the Pollman place and went on and looked at the place. Mr. Stainbrook and I had our conversation at the garage when we came back. I then went home.   .   .   .   I came back to La Cygne and I went to Stainbrook and said, 'Did you get that written agreement with that fellow?' And he said, 'No.'

.   .   .   .   .   .   .   .   .   .   .   .   .

"Q. Then what did you do? A. He told me the man that ran the butcher shop owned the land. I never knew the man and I went up there and some one told me who Pollman was and I met him coming across the street in La Cygne, and I gave him a card and introduced myself and asked him if Stainbrook had the farm listed for sale, and he told me he had not."

The defendant also showed that he paid $16,000 for the farm and became responsible for a contract of Pollman concerning the sowing of wheat, and obligated himself to pay interest due or to become due on a $3,500 mortgage on the farm, and to pay the taxes. While the record is not clear on these points, it is inferable that the interest was not due until the following March, that the taxes were not then a lien on the land, and that defendant acquired an interest in the wheat for which he agreed to become resposible.

On rebuttal, plaintiff testified:

."Q. Did you have any conversation there in which Mr. Wilson asked you if you had gotten this net agreement with Ed Pollman for the price of this farm? A. If I had gotten it? I told him I wouldn't get it, that Ed would do what he agreed to.

"Q. Did Mr. Wilson ever ask you to get an agreement for a net price on the farm? A. Not no net price, we was to get an agreement so he couldn't back out if we made a sale we wouldn't lose out.

.      .      .      .      .      .      .      .      .      .      .      .

"Q. Did Mr. Wilson ever tell you he wouldn't have anything to do with the land unless you did get a written agreement? A. No, sir; he never did.

.      .      .      .      .      .      .      .      .      .      .      .

"A. I remember of telling him I wouldn't get it."

From a verdict and judgment for $250 in plaintiff's favor, defendant appeals.

This is another fact case, of the kind so often brought to this court, and as to which this court can seldom do little except to set down its controlling features and then affirm the judgment. Defendant says the demurrer to plaintiff's evidence should have been sustained. In view of those portions of the evidence which we have quoted, such contention is manifestly incorrect. Defendant says: "No contract was ever completed between Stainbrook and Wilson." That was a fair contention to make in view of the conflict of testimony, until the jury had determined whether Stainbrook or Wilson was telling the truth, but it is a waste of words to argue that now.

Appellant contends:

"There was nothing in the relationship between Wilson and Stainbrook which made Wilson liable to Stainbrook for a commission when Wilson discontinued negotiations with Pollman as Pollman's agent and began to deal with Pollman on the basis of vendor and purchaser."

Why not? They made the agreement to undertake the sale of Pollman's farm and to divide the $500 commission. Wilson owed Stainbrook the duty of good faith in their joint project to effect a sale of the farm and thus jointly to earn the $500. He could not, without notice to Stainbrook and without his consent, ignore his agreement and make an independent bargain with Pollman whereby Stainbrook would be deprived of his half of the commission. By purchasing the property himself he secured an abatement of $500 on the price from Pollman, which was equivalent to a commission. Pollman so testified. That the abatement was not precisely the sum of $500 is immaterial. Pollman was not informed that Stainbrook had interested Wilson in the farm, or that Stainbrook

had taken Wilson into a deal whereby they were to coöperate in the sale of the farm and divide the commission. Under such circumstances, while Pollman had reduced the price because he was not liable for a commission, Wilson by reason of his dealings with Stainbrook and because of his bad faith towards Stainbrook profited to the extent of $500 in the acquisition of the farm by himself. Neither law nor good conscience would permit him to deprive Stainbrook of his share of the $500 under such circumstances.

No error of law nor miscarriage of justice inheres in this result, nor can anything further be discerned which would justify discussion.

The judgment is affirmed.